# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, <br><br>  Plaintiff, <br><br> v. <br><br> PACIFIC AIR HOLDINGS, LLC, AERO WING EQUIPMENT, LLC, BRAVO WING EQUIPMENT, LLC, DELTA WING EQUIPMENT, LLC, and PACIFIC WINGS, LLC, <br><br>  Defendants. | Case No. CIV-21-510-PRW |

## PLAINTIFF'S COMPLAINT
## FOR DECLARATORY JUDGMENT

Plaintiff, Starr Indemnity & Liability Company ("Starr"), complains of Defendants, Aero Wing Equipment, LLC ("Aero"), Bravo Wing Equipment, LLC ("Bravo"), Delta Wing Equipment, LLC ("Delta"), Pacific Wings, LLC ("Pacific Wings"), and Pacific Air Holdings, LLC ("Pacific Air") and hereinafter at times collectively referred to as "Defendants", and seeks a declaratory judgment under 28 U.S.C. 2201 *et seq.*, for a construction of an aircraft insurance policy and a declaration that Defendants are not entitled to any coverage and/or benefits under the policy and, in support thereof, would respectfully show this Court as follows:

## II.
## PARTIES

2.01  Plaintiff Starr is a Texas corporation with its principal place of business in the State of New York. Therefore, Starr is domiciled in Texas and New York.

2.02  Defendant Aero is a Nevada limited liability company whose managing member is Pacific Air Holdings, LLC, located at 2202 Airport Drive, Shawnee, Oklahoma 74804, and Aero can be served though its registered agent, Business Filings Incorporated, at 701 S Carson Street, Suite 200, Carson City, Nevada 89701. Therefore, Aero is domiciled in Oklahoma.

2.03  Defendant Bravo is a Nevada limited liability company whose managing member is Pacific Air Holdings, LLC, located at 2202 Airport Drive, Shawnee, Oklahoma 74804, and Bravo can be served though its registered agent, Business Filings Incorporated, at 701 S. Carson Street, Suite 200, Carson City, Nevada 89701. Therefore, Bravo is domiciled in Oklahoma.

2.04  Defendant Delta is a Nevada limited liability company whose managing members are R. Franklin Ford Jr. and Darrin Lofton, located at 2202 Airport Drive, Hangar 11, Shawnee, Oklahoma 74804, and Delta can be served though its registered agent, Business Filings Incorporated, at 701 S. Carson Street, Suite 200, Carson City, Nevada 89701. Therefore, Delta is domiciled in Oklahoma.

2.05  Defendant Pacific Wings is a Nevada limited liability company whose managing member is R. Franklin Ford Jr., located at P.O. Box 20280, Mesa, Arizona

85277, and Pacific Wings can be served though its registered agent, Business Filings Incorporated, at 701 S. Carson Street, Suite 200, Carson City, Nevada 89701. Therefore, Pacific Wings is domiciled in Arizona.

2.06   Defendant Pacific Air is a Nevada limited liability company whose managing members are R. Franklin Ford Jr. and Darrin Lofton, located at 2202 Airport Drive, Hangar 11, Shawnee, Oklahoma 74804, and Delta can be served though its registered agent, Business Filings Incorporated, at 701 S. Carson Street, Suite 200, Carson City, Nevada 89701. Therefore, Pacific Air is domiciled in Oklahoma.

### III.
### JURISDICTION

3.01   The controversy in this lawsuit concerns whether there is coverage for the total loss of the Aircraft alleged by Defendants, which claim is in excess of $75,000.

3.02   Under 28 U.S.C. § 1332(a), this Court has jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

3.03   Venue is proper in the Western District of Oklahoma under 28 U.S. Code § 1391 because one or more of the Defendants reside in Pottawatomie County, Oklahoma which is in the Western District of Oklahoma.

### IV.
### FACTS

A.   **Aircraft Lease Agreements**

4.01   Defendants are in the international aircraft leasing business.

4.02   In October 2016, Defendants entered into an Aircraft Lease Agreement with PT Spirit Avia Sentosa ("Flying SAS"), a Jakarta limited liability company for a Cessna 208B aircraft, ("Aircraft #1"). The lease was later extended until October 6, 2021.

4.03   In June 2017, Defendants and Flying SAS entered into another Aircraft Lease Agreement for a Cessna 208B aircraft, ("Aircraft #2"), for a period of 60 months, ending on or before June 30, 2022. Defendants and Flying SAS also entered another Aircraft Lease Agreement for another Cessna 208B, ("Aircraft #3"), for 60 months, ending on or before June 30, 2022. Flying SAS had exclusive use and possession of Aircraft #1, #2, and #3.

4.04   In October 2017, Defendants entered into an Aircraft Lease Agreement for another Cessna 208B ("Aircraft #4") with PT National Gold West Papua Indonesia ("NGWPI") for a period of 120 months, ending on or before November 30, 2027. In June 2018, Defendants and NGWPI entered into an Aircraft Lease Agreement for a Cessna 208B ("Aircraft #5") for a period of 60 months, ending or before June 30, 2023. NGWPI had exclusive possession of the two aircraft operated it for commercial purposes in Indonesia.

4.05   Defendants later discovered that NGWPI executed a side agreement whereby Next Generation Wave ("NGW") assumed NGWPI's rights and obligations under the Aircraft Lease Agreement for Aircraft #5. NGW was believed to have exclusive possession of the aircraft and operated it for commercial purposes in Indonesia.

4.06   Flying SAS and NGWPI will be collectively referred to as the "Lessees." Aircraft #1-#5 will collectively be referred to as the "Aircraft."

4.07   By early 2019, the Lessees had defaulted on the leases and abandoned the aircraft. Defendants attempted to correspond with the Lessees to regain possession of the

aircraft but were unsuccessful.

4.08   On June 21, 2019, Defendant Pacific Air filed lawsuits against the Lessees in the Western District of Oklahoma, Case No. CIV-19-569-HE and Case No. CIV-19-570-PRW for breach of contract, replevin, conversion, and unjust enrichment. In the Complaint, Pacific Air alleged that the Lessees allowed the Aircraft to sit on the grass outside the hangar exposed to a saltwater environment without any form of corrosion control. Pacific Air acknowledged that the Aircraft will likely need a complete overhaul. *See* Pacific Air's Complaints against Lessees, attached as Exhibits "1", ¶ 26 and "2" ¶ 21.

4.09   Even after the lawsuits were filed, Defendants continued to communicate with the Lessees, and Defendants traveled to Indonesia to inspect the aircraft. In September 2019, Defendants asked for help from the Lessees and "[their] investment into Indonesia is being destroyed". Defendants attached photos of the Aircraft to the email and stated the "aircraft are in terrible condition." Defendants even discussed how one (or more) of the Lessees had let their insurance on the aircraft lapse in or about January 2019.

4.10   Since then, the Aircraft have continued to sit abandoned in the grass, decaying at various airports in Indonesia. According to Defendants, there is major corrosion to the airframes and engines, grass is growing on the Aircraft, the engines are rusted and corroded, rodents and other animals are living in the aircraft, and various parts have been stolen.  Defendants have encountered difficulty retaining possession of the Aircraft due to the Indonesian government.

**B.**   **Starr Insurance Policy**

4.11   Starr issued an aviation insurance policy to Defendants that provided

coverage for

Physical Damage to the Aircraft, Policy No. SASICOM60090019-06, with effective dates from October 31, 2019, to October 31, 2020, which a redacted version is attached hereto as Exhibit "3" and referred to as the "Policy." The Policy provides Physical Damage coverage to Defendants for the Aircraft subject to all of the terms, conditions and exclusions in the Policies.

### C. Defendants' Claim for Loss

4.12  On October 5, 2020, Defendants, through its previous counsel, sent a letter to Starr stating that it was Defendants' position that the Aircraft should be regarded as a total loss because of the evidence of theft and decay. This letter from the Defendants stated that they did not have any of the insurance documents from the Lessees and Defendants did not have a date for the occurrence but could only provide the time period of 2019 to present. Defendants alleged corrosion, missing parts, rusted airframe, grass growing into the Aircraft, mold growth, damage to the battery, and animals living inside the Aircraft.

4.13  On October 26, 2020, Starr, through its counsel, sent Defendants a Reservation of Rights letter outlining various coverage issues regarding Defendants' claim and requesting certain documents.

4.14  On January 12, 2021, Defendants sent Starr various documents, videos, and photographs connected to their claim. The documents from Defendants confirmed that they understood the Aircraft are deteriorating and corroding.  Additionally, the documents confirmed that by September 2019, Defendants knew the Lessees had defaulted on their primary insurance premiums and the Lessees' policies were no longer valid. Furthermore,

Defendants also became aware of the Aircraft's abandonment and deteriorating condition in or about Spring 2019 before they filed their lawsuits.

## V.
## DECLARATORY JUDGMENT

5.01    Starr is not obligated to make any payments to Defendants under the Policy's Physical Damage Coverages, Coverages F or G or H, for the alleged missing Aircraft because: (i) the claim is not covered under the Policy's Wear and Tear Exclusion; (ii) the Conversion Exclusion applies, preventing coverage for conversion under a lease agreement; (iii) Defendants failed to give proper notice of the claim to Starr; (iv) Defendants failed to ensure that the Lessees maintained insurance and failed to notify Starr when the Lessees' insurance lapsed[1], and (v) Defendants already knew that the Aircraft had been abandoned and were deteriorating at the time Starr issued the Policy and Defendants failed to inform Starr of the decaying condition of the Aircraft.

### A.    Wear and Tear Exclusion

5.02    Under Coverages F, G, and H of the Policy, Defendants are entitled to be paid for any covered Physical Damage to or loss of the Aircraft.  However, the Policy specifically excludes the following:

> Under Coverage F, G, and H
> …
> (c) to loss or damage which due and confined to
>     (1) wear, tear, deterioration, freezing.

*See* Exhibit 3 – The Policy.

---

[1] In fact, Defendants already had actual knowledge that the Lessees had defaulted on their insurance at the time the Policy was issued.

**Plaintiff's Complaint for Declaratory Judgment**                                                                                              **Page 7**

5.03   Defendants admitted in their communication with the Lessees and with Starr that the Aircraft are deteriorating. Therefore, because the claim is due and confined to deterioration, the Policy does not provide coverage for Defendants' claim.

### B.   Conversion Exclusion

5.04   In addition or in the alternative, Defendants have represented that they do not have possession of the Aircraft and parts of or the entire Aircraft have been converted.

5.05   The Policy states the following:

Under Coverage F, G, and H

(a) A loss or damage to an aircraft due to conversion, embezzlement or secretion by any person or organization with legal right to possession of such aircraft under bailment, lease, conditional sale, purchase agreement, mortgage or other legal agreement that governs the use, sale of lease of the aircraft, not for any loss or damage during or resulting therefrom. This exclusion does not apply to loss or damage to such aircraft caused when a renter pilot, renting such aircraft pursuant to a rental agreement, converts, embezzles or secretes the aircraft while it is in the renter pilot's possession provided the named insure or the renter, lessor or owner of the aircraft are in no way associated with or a participant in such conversation, embezzlement or secretion and have no prior knowledge thereof and have not acquiesced therein.

*See* Exhibit 3 – The Policy.

5.06   While Defendants' claim for the damage to the Aircraft is caused by the Aircrafts' deteriorating condition, Defendants have also used some language alluding to a conversion claim by the Lessees. However, even a claim framed under conversion is not covered because the conversion was committed by the Lessees who had lease agreements for the Aircraft and consequently a legal right of possession. Additionally, the conversion was not committed by a renter pilot and

even if it was, the lessor of the aircraft was also associate and participated in the conversion, which means the claim is still not covered. Ultimately, Defendants' business deal gone wrong with the Lessees is simply not a covered claim under the Policy.

**C.     Notice of Loss**

5.07    Pleading in addition or in the alternative, Defendants failed to provide proper notice of their alleged loss. For coverages F, G, and H (Physical Damage), the Policy provides that Defendants must do the following:

> When loss occurs, the insured shall:
>
> (a) take all reasonable precautions to protect the property or aircraft after an occurrence. The Company shall reimburse the insured all reasonable cost in affording such protection;
> (b) not abandon the property or aircraft;
> (c) immediately contact the aviation managers and provide prompt written notice at the address appearing on the back of the policy cover, including the:
>
>> (1) time, place and description of events;
>> (2) description and location of the aircraft;
>
> (d) promptly report theft and vandalism to the aviation managers and local police;
> (e) do nothing after the loss to harm the Company or aviation managers rights of recovery against any person or organization;
> (f) allow the Company or aviation managers to inspect the property;
> (g) submit to examination under oath if requested by the Company or aviation managers;
> (h) allow the Company or aviation managers to inspect all aircraft records, pilot logbooks, repair and service invoices, sales receipts and any other pertinent records until settlement of the loss;
> (i) file proof of loss with the aviation managers within sixty (60) days after the date of loss, in the form of a sworn statement to include:
>
>> (1) the interest of the named insured and of all others in the

>>> property affected;
>>> (2) any encumbrances thereon;
>>> (3) the actual cash value of the property at the time of the loss;
>>> (4) the amount, place, time, and cause of such loss;
>>> (5) the description and amounts of all other insurance covering such property.
>
> Unless such time is extended in writing by the Company or its aviation managers.

*See* Exhibit 3 – The Policy.

5.08   In this case, Defendants failed to file a proof of loss within sixty (60) day. In fact, Defendants filed their lawsuits against the Lessees in June 2019. However, Defendants did not file a claim with Starr for the loss until over a year later in October 2020. Meanwhile, the Aircraft have continued to deteriorate in Indonesia into alleged total losses by Defendants. Without notice of the loss, Starr was unable to inspect the Aircraft and work to get the Aircraft back to Defendants. Ultimately, the lack of proper notice under the Policy greatly prejudiced Starr and increased the damage to the Aircraft and Defendants' alleged claim. Accordingly, Defendants breached the Policy, and as such, Defendants are not entitled to any payments for physical loss under Coverage F, G, H—Physical Damage.

### D. Lessee Insurance

5.09   Pleading in addition or in the alternative, Defendants were required to ensure the Lessees maintained their own primary insurance under the Policy. Additionally, should the Lessees' insurance lapse, Defendants were required to take specific steps and notify Starr. On this point, the Policy stated the following:

> In consideration of an additional premium of $__INCLUDED__, this policy

is amended as follows:

CONTINGENT HULL COVERAGE

As regards an aircraft leased to/used by another party(ies), the Company will indemnity the Named Insured under Insuring Agreement III. Physical Damage Coverages, subject to its terms, conditions, limitations and exclusions, in respect of loss of or damage to such aircraft to the extent that the Named Insured is not indemnified by such other party(ies).

REQUIRED PRIMARY INSURANCE

The Named Insured agrees as follows with respect to insured aircraft which are not repossessed aircraft:

1. Chartered/Leased Aircraft Primary Insurance Requirement:

The Named Insured agrees to require that a borrower or lessee maintain primary "all risk hull" including in flight coverage. The policy shall include a breach of warranty or like form of lienholder's coverage for the interest of the Name Insured which must include but not be limited to affording the Named Insured, Loss Payee, Breach of Warranty and thirty (30) days' notice of cancellation or adverse material change in coverage. The policy limit should be at least the amount of the Insured's interest. It must name the Named Insured as an additional Insured for liability.

The Named Insured may give permission for the borrower or lessee to purchase all risk ground coverage if the insured aircraft is withdrawn from servicer for more than thirty (30) consecutive days for the purpose of refurbishing the insured aircraft or maintaining it. They must receive written permission from the Named Insured, and agree to inform the Named Insured as soon as possible when it returns to service. At that time, they must resume all risk coverage including In-Flight coverage to include those minimum coverages as required above.

It is specifically understood and agreed that this policy does not cover any loss, damage, or liability which is recoverable as a claim from the primary insurance. Furthermore, if at the time of any Bodily Injury or Property Damage there is, or but for the existence of this policy, would be any other policy of indemnity or insurance in favor of the Named Insured and applicable to such claim, the Company shall not be liable under this policy to indemnify the Insured in respect of such claim except for any excess

beyond the amount which would be payable under such policy of indemnity or insurance had this policy not been affected.

2. Leased Aircraft or Financed Aircraft with no Primary Insurance:

The Named Insured agrees to notify the Company if the primary insurance coverage required in this condition is not maintained. Notice shall be mailed to the Company within ninety (90) days of the Named Insured's knowledge of the lack or insufficiency of required insurance.

3. Conditions for Continued Insurance:

The Named Insured also agrees that, as a condition of continued coverage under this policy where the required primary insured is not replaced within the ninety (90) days specified above, the Named Insured will take immediate steps to recover their Insured's interest. These steps shall include demand for payment, repossession and any legal action necessary to the recovery.

The coverage afforded hereunder does not apply to any amount not recovered from other insurance policy(ies) due to the insolvency of insurers thereunder. Notwithstanding any other provision(s) of this endorsement, inadvertent errors or omissions and/or failure in furnishing information, notification or reports requires will not prejudice coverage afforded by this policy provided the Named Insured notified the Company within a reasonable time after the error or omission is discovered.

*See* Exhibit 3 – The Policy.

5.10  Upon reasonable information and belief and the documents provided by Defendants, the Lessees stopped paying their primary insurance premiums in or about January 2019. It is unclear that exact date Defendants discovered the Lessees' primary insurance lapsed, but Defendants likely knew when they filed their lawsuits in June 2019. By September 2019, Defendants had actual knowledge that the Lessees had failed to maintain their primary insurance. However, instead of informing Starr of the failure to maintain the primary insurance, Defendants renewed the Policy on October 31, 2019. Even after Defendants renewed the Policy with actual knowledge of the lack of primary

insurance, Defendants waited approximately one year before filing the loss with Starr and informing Starr of the lack of primary insurance. Defendants' failure to provide notice greatly prejudiced Starr because the Aircraft had already begun to deteriorate when the Policy was issued, and the Aircraft continued to deteriorate during the year or more that Defendants failed to give notice to Starr. Therefore, Defendants breached the condition of the Policy, and Defendants are not entitled to any payments for physical loss under Coverage F, G, H—Physical Damage.

### E. Policy *Void Ab Initio*

5.11   Pleading in the alternative, Starr alleges the that Policy is void *ab initio* because of the misrepresentations and concealments made by Defendants.

5.12

At the time the Policy was renewed, Defendants had actual knowledge that the Aircraft were already deteriorating in Indonesia. Defendants failed to disclose this information to Starr.

5.13   At the time the Policy was renewed, Defendants has actual knowledge that the Lessees no longer maintained primary insurance on the Aircraft. Defendants failed to disclose this information to Starr.

5.14   The concealment and misrepresentation of these facts were (1) fraudulent, (2) material to Starr's acceptance of the risk and the hazard assumed by Starr, and (3) Starr in good faith would either not have issued the Policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to Starr as required by the application for the Policy. The concealment

and misrepresentations were made with the intent to deceive. Therefore, under 36 Okl.St. Ann. § 3609, Starr asks this Court to prevent Defendants' recovery and void the Policy *ab initio*.

**F. Summary**

5.15    An actual and justiciable controversy presently exists between Starr and Defendants regarding whether there is coverage for the total loss claim for the Aircraft submitted by Defendants under the Policy. Starr brings this declaratory judgment action to this Court for a resolution regarding this coverage dispute, or in the alternative, a ruling from the Court that the Policy is void *ab initio*.

## VI.
## FURTHER RELIEF

6.01    Under 28 U.S.C. 2202, Starr requests this Court award Starr all necessary and proper relief, including Starr's attorney's fees.

## VII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Starr prays that Defendants be cited to appear and answer herein and that upon final hearing hereof, this Court grant Starr's judgment that:

1. Declares the legal rights, obligations, and other legal relations of Starr and Defendants under the provisions of the Policy involved;

2. Declares that there is no coverage under the Policy for the physical loss of or damage to the Aircraft and that Starr is not obligated to pay any claims to Defendants, or any other person or entity, which may

  arise and/or relate to the physical loss of or damage to the Aircraft;

3. Declares the Policy *Void Ab Initio*;

4. Award Plaintiff's reasonable and necessary attorneys' fees; and

5. Awards Plaintiff such other and further relief for which it may show itself justly entitled, at law or in equity.

        Respectfully submitted,

        /s/ Brock C. Bowers
        Brock C. Bowers, OBA #15682
        Katie R. McCune, OBA #31642
        Hiltgen & Brewer, P.C.
        9505 North Kelley Avenue
        Oklahoma City, OK  73131
        Tel: (405) 605-9000
        Fax: (405) 605-9010
        Email:  bbowers@hbokc.law
            kmccune@hbokc.law

        and

        Geffrey W. Anderson (Motion for Pro Hac Vice to be applied for)
        State Bar No. 00786980
        Shannon Dugan (Motion for Pro Hac Vice to be applied for)
        State Bar No. 24106934
        ANDERSON & RIDDLE, L.L.P.
        1604 8th Avenue
        Fort Worth, TX  76104
        817/334-0059  [Telephone]
        817/334-0425  [Facsimile]
        ganderson@andersonriddle.com
        sdugan@andersonriddle.com
        **ATTORNEYS FOR PLAINTIFF**